**DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

**JULIE BEBERMAN,**

**Plaintiff,**

**v.**

**SECRETARY OF STATE MARCO RUBIO,**

**Defendant.**

**1:25-cv-00041-RAM-EAH**

**TO: Julie Beberman, Esq.**
**Peter James Lynch, Esq.**
**Adam Francis Sleeper, Esq., U.S. Attorney**

**ORDER**

**THIS MATTER** comes before the Court following the issuance of an Order by Chief Judge Robert A. Molloy on April 1, 2026, referring all future dispositive motions in this case to the undersigned for a Report & Recommendation, and referring all pending and future non-dispositive pre-trial matters to the undersigned for final disposition. Dkt. No. 12.

On August 13, 2026, the Court granted a Motion to Transfer Venue, filed by the Defendant, Secretary of State Marco Rubio, and ordered this case transferred to the District Court of the District of Columbia. Dkt. No. 24. Later that day, Plaintiff Julie Beberman, Esq., filed an Emergency Motion to Stay Transfer Pending Objections, in which she asked the Court to enter a stay to preserve the status quo while she prepares and files objections to this Court's Transfer Order and, if necessary, pursues an appeal to the Third Circuit Court of Appeals.-Dkt. No. 25. The Court ordered Secretary Rubio file a response by August 18, 2026 at 3:00 p.m., and permitted Ms. Beberman to file a reply by August 19, 2026 at 3:00 p.m., Dkt. No. 26. Prior to 3:00 p.m. on August 19, 2026, Ms. Beberman a 21-page Notice of Objections to the Transfer Order, Dkt. No. 28, after which she filed a 20-page Reply to the Secretary's

Opposition, Dkt. No. 30. For the reasons that follow, the Court will deny the Emergency Motion.

**BACKGROUND**

**I. The Motion to Transfer and Order Granting Transfer Motion**

The Court will only briefly provide a background, as a more extensive background may be found in the August 13, 2026 Order Transferring Venue. Dkt. No. 24. On December 15, 2025, Plaintiff filed an Amended Petition for Review in this Court (the "Petition") against Secretary Rubio in his official capacity. Dkt. No. 3. Ms. Beberman sought judicial review of certain Orders and Decisions of the Foreign Service Grievance Board (the "FSGB") that denied her tenure in the foreign service. She asked this Court, inter alia, to reverse, vacate, or remand with directions to modify the Orders and Decisions issued by the FSGB; expunge her Employee Evaluation Report from July 26-November 7, 2012; reconsider her for tenure/promotion; and grant back pay, attorney's fees, and costs. *Id*. at pp. 17-18

The Secretary filed a Motion to Transfer on May 22, 2026. Dkt. No. 16. He asserted that this action is one of at least eighteen lawsuits that Ms. Beberman has filed with respect to her eight-year employment with the State Department. Dkt. No. 16 at 1-2 (citing cases). However, the key case with respect to the Motion to Transfer is *Beberman v. Rubio* which Ms. Beberman filed in the District Court for the District of Columbia in November 2022 and in which she challenged the same FSGB Orders and Decisions that she challenges here. *Id.* The Secretary added that, on May 12, 2025, after extensive briefing, the D.C. Court granted the Secretary summary judgment on all of the claims except on a narrow issue that was

remanded to the FSGB for resolution. *Beberman v. Rubio*, No. 22-cv-3434 (TJK), 2025 WL 1369306 (D.D.C. May 12, 2025) ("*Beberman DC*"). The FSGB rejected that remanded issue on the merits on September 30, 2025. Dkt. No. 16 at 3. Ms. Beberman also appealed the May 12, 2025 opinion to the D.C. Court of Appeals, which dismissed for lack of jurisdiction.

The Secretary asserted that, rather than return to the District of Columbia where Ms. Beberman had litigated her dispute concerning the FSGB Orders and Decisions for over three years, she filed a new Petition in this Court in December 2025. *Id*. In that Petition, she did not limit her dispute to judicial review of the issue that was remanded; rather, she purported to challenge the host of issues that were decided or could have been raised in *Beberman DC*. *Id.* at 3-4. The Secretary posited that because *Beberman DC* was resolved largely in his favor, the reason Ms. Beberman seeks to file the remainder of that case in this Court is to avoid the judge that ruled against her and to attempt to obtain de novo consideration of issues already addressed; he claimed that Ms. Beberman was engaged in forum shopping. *Id.* at 11. He addressed the private and public factors set out in *Jumara v. State Farm Ins. Co*., 55 F.3d 873, 879-80 (3d Cir. 1995), that courts assess in adjudicating motions for change of venue. The Secretary contended that most of the factors favor transferring venue to the District of Columbia and some were neutral. *Id.* at 4-17.

Ms. Beberman responded that the criteria for transfer under 28 U.S.C. § 1404(a) were not met. Dkt. No. 20 at 1. She filed her Petition in this Court not to avoid the D.C. Court's "nonfinal" rulings but because it was her home forum and she was able to obtain counsel that she lacked in the D.C. Court. *Id*. at 6-7. She emphasized that her choice of forum was accorded

"substantial deference" under *Jumara*. Dkt. No. 20 at 10. The Secretary filed a reply in which he reiterated his position that Ms. Beberman was forum shopping by seeking to re-litigate the entire *Beberman DC* case in this Court when the judge in the D.C. Court had rejected all of her claims but one, which it remanded. Dkt. No. 23.

The Court issued an Order on August 13, 2026 (the "Transfer Order") in which it applied the private and public interest factors, as set out in *Jumara*, 55 F.3d at 879-80. Dkt. No. 24. It held that while a plaintiff's "original choice of forum" preference is typically accorded "paramount consideration," *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970), that default position of deference gives way when none of the operative facts underlying the claim occurred in the plaintiff's chosen forum, when a party "appears to be forum shopping or seeking a safe haven from the lawful orders of another court," and/or where a related action is pending in another forum. The Court concluded that Ms. Beberman's "original choice" of forum to litigate the matters contained in the Petition filed in this Court was the D.C. Court, given the substantial similarity between the two petitions and that Ms. Beberman was seeking a second bite of the apple by relitigating *Beberman DC* in a new forum, where she could avoid the District Judge in *Beberman DC* who had rejected all of her arguments (except on the remanded issue). *Id.* at 12-14. In the Court's view, Ms. Beberman was forum shopping, which served as a reason to grant the Secretary's motion. In addition, none of the operative facts occurred in the Virgin Islands, and the *Beberman DC* case was not closed (despite that wording in the May 12, 2025 Order accompanying the D.C. Court's summary judgment decision). *Id*. at 14-16. The Court considered but did not give

much weight to the DVI being Ms. Beberman's home forum, pointing out that she litigated *Beberman DC*—essentially the same case—for three years in the D.C. Court while domiciled in the Virgin Islands. As to Ms. Beberman's assertion that she was able to obtain counsel only for a case filed in the DVI and that if she litigated in the D.C. Court, she would be unable to procure counsel, the Court observed that she did not "aver" that she tried and failed to obtain counsel in the D.C. Court, and there could be a host of other reasons for the fact that Ms. Beberman, an attorney, appeared pro se in that court. *Id*. at 14-15. Moreover, the same local counsel litigating the instant case in the DVI also served as her counsel before the FSGB in Washington, D.C. when it addressed the remanded issue— indicating that the VI counsel had the ability to litigate outside of the DVI. The Court concluded that the "Plaintiff's choice of forum" private factor weighed heavily in favor of transfer, and other private factors either weighed in favor of transfer or were neutral or inapplicable, and the public factors either weighed in favor of transfer or were inapplicable. It granted the Secretary's motion and ordered the case transferred to the District of Columbia. *Id*. at 17-24.

## II. The Emergency Stay Motion

Just over five hours after the Court issued the Transfer Order, Ms. Beberman filed the instant 19-page Emergency Motion, seeking a stay of the Order until she had an opportunity to prepare and file objections to it or "if necessary, pursues an appeal to the Third Circuit Court of Appeals." Dkt. No. 25 at 1. She argues that the Court improperly credited the Secretary's forum shopping and judicial efficiency arguments, discounted the significant

burdens the transfer imposed on her, and asserts that all four of the stay factors favor staying the Transfer Order until she has filed her objections to it. *Id.* at 3-19.

In his Opposition, the Secretary argues that Ms. Beberman has not made a showing that she is likely to succeed on the merits, as she merely regurgitates arguments that the Court rejected. Dkt. No. 27 at 2. Her irreparable injury argument boils down to the position that losing a motion to transfer will always cause irreparable harm because of the costs to litigate in the forum where the case was transferred. The remaining factors "merge when the Government is the opposing party," *KalshiEX, LLC v. Flaherty*, 172 F.4th 220, 225 (3d Cir. 2026) and are relatively neutral. *Id*. at 3-4. The Secretary submits that further delay in resolving Ms. Beberman's failed 2015 administrative cases is unwarranted and smacks of further "gamesmanship" to avoid the conclusion of this case. *Id.*

In her Reply, Ms. Beberman states that she is seeking a stay "to preserve the status quo while the District Court rules on the Objections, and if necessary, pursue a Writ of Mandamus in the Third Circuit Court of Appeals." Dkt. No. 30 at 1. For the most part, the Reply is an expansion of the arguments she proffered in her moving brief, where she submits additional case law and finesses those arguments. Only about two pages of the 19-page Reply actually respond to the Secretary's Opposition. *Id*. at 10, 18, 19.

**DISCUSSION**

**I. Legal Standards**

A stay "is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the

circumstances of the particular case. The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009) (citation modified).

> The fact that the issuance of a stay is left to the court's discretion does not mean that no legal standard governs that discretion. A motion to a court's discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles. Those legal principles have been distilled into consideration of four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id*. at 434 (citation modified). *Nken* goes on to say that "[t]he first two factors of the traditional standard are the most critical. It is not enough that the chance of success on the merits be better than negligible. By the same token, simply showing some possibility of irreparable injury fails to satisfy the second factor. As the Court pointed out earlier this Term, the possibility' standard is too lenient." *Id.* at 434-35. In *In re Revel AC, Inc*., the Third Circuit discussed the application of a "sliding scale" to the stay factors. 802 F.3d 558, 569 (3d Cir. 2015). The analysis should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not [necessarily] greater than 50%) *and* (b) will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.

*Id.* at 571.

"When a magistrate judge considers whether to stay his order pending appeal to a district judge, he must weigh the same factors a court considers when determining whether to stay an order pending appeal to a circuit court." *Boynes v. Limetree Bay Ventures, LLC,* No. 21-cv-0253, 2025 WL 2256162, at *6 (D.V.I. Aug. 7, 2025). The instant Motion is not directed to staying the transfer of this case while the District Judge considers Ms. Beberman's objections to the Transfer Order. Rather, the motion is directed to staying transfer until Ms. Beberman files those objections. But, pursuant to the Local Rules, "[t]he filing of a notice of objection does not operate to stay the [Magistrate Judge's] order pending a determination by the District Judge. A stay of a Magistrate Judge's order must be sought in the first instance from the Magistrate Judge whose order has been objected to[.]" LRCi 72.2(b).

## II. Application

### A. Likelihood of Success on the Merits

#### 1. The Parties' Arguments

Ms. Beberman states that, in determining whether she is likely to succeed on the merits before the District Judge, the issue is whether she can show that the Transfer Order was clearly erroneous or contrary to law. Dkt. No. 25 at 4. She acknowledges that this standard is deferential, but the Court should nevertheless find that it has been met because the Court committed "three fundamental errors." *Id*. at 6. The Transfer Order (1) gave insufficient weight to her choice of her home forum in the Virgin Islands; (2) did not give sufficient weight to the importance of her having the counsel of her choice; and (3) failed to require the Secretary to make the demanding showing necessary to overcome her forum

choice. *Id.* As to the public interest factors, she re-asserts the arguments she made in her opposition to the Transfer Motion: reiterating that the D.C. Court closed the case (as indicated in its May 2025 Order), thereby relinquishing jurisdiction over it, and the May 2025 decision was "nonfinal." *Id.* at 7-9. As to the private factors, the Transfer Order "reflects a systematic underevaluation that plaintiff's forum choice" to file the action was in the District of the Virgin Islands—her "original choice" of forum. *Id*. at 9. While she concedes the action in the D.C. Court was "related" to the instant petition, she "did not have the benefit of counsel in that matter and that matter is closed." *Id*. at 10. She focuses on the Court not giving her position that she filed in the DVI so that she could be represented by counsel there sufficient weight to anchor the action in the DVI. She claims the Court "clearly erred" in reasoning that because counsel (based in Florida, barred in the DVI, but not barred in D.C.) represented her before the FSGB, he could represent her in D.C.: "That is not true." *Id*. Her chosen counsel could only represent her pro hac vice if she could find counsel barred in D.C. who would take her case: but because neither she nor her counsel were members of the D.C. bar or live in the D.C. area, "this is a heavy lift." *Id.* She asserts that the Court placed an improper burden on her to "attempt and fail to obtain counsel in D.C. to justify filing this new petition here." *Id.* Based on her statement that she has been able to obtain counsel only for cases filed in the DVI, "the Magistrate Judge should have concluded that Ms. Beberman could not readily obtain counsel in D.C." *Id.* at 11. She also reiterates that the Court must give deference to a plaintiff's choice of her home forum, a point which the Court ignored. She

reiterated many of her arguments in opposition to transfer, such as that the Secretary was the one who was forum shopping. *Id*. at 12-14.

In his Opposition, the Secretary argues that Ms. Beberman has not made a showing that she is likely to succeed on the merits, as she merely regurgitates arguments that the Court rejected. Dkt. No. 27 at 2. As to the three "fundamental errors" she claims that the Court made, the first and third ones—giving insufficient weight to the choice of her home forum and failing to require the Secretary to make the demanding showing necessary to overcome her forum choice—were rejected because the Court viewed her original choice of forum as the D.C. Court, gave proper consideration to her forum shopping, and concluded transfer would significantly further efficiency and benefit the judicial system. *Id*. at 2-3. As to the second error—not giving sufficient weight to the importance of having the counsel of her choice—convenience of counsel is not a factor to be considered. *Id*. at 3.

Ms. Beberman begins her Reply by stating: "Having set forth the background and legal standards for granting a stay in her emergency motion, and given the limited briefing period of 24 hours, Ms. Beberman will delve directly into her argument, and address the factors the Court considers when deciding whether to grant a stay." Dkt. No. 30 at 1. She then expands upon the arguments made in her moving brief, adding much more case law and new approaches to those arguments, such as that "there is no precedent for finding forum shopping when a plaintiff has filed an action in their home forum." *Id*. at 8.

### 2. Application

As an initial matter, the Court views Ms. Beberman's Reply as an impermissible 19-page supplement to her moving brief because, for the most part, it does not reply to the Secretary's Opposition but expands upon the arguments made in her moving brief, providing additional support. The Court perceives no legitimate reason why the arguments in the moving brief and Reply could not have been consolidated in the moving brief, particularly since Ms. Beberman was likely anticipating denial of the Transfer Order given that she filed the 19-page Emergency Stay Motion within hours of the Court docketing the Transfer Order. But in filing her 19-page moving brief supplemented by the 19-page Reply, she circumvented the 20-page limitation for briefs incorporated in LRCi 7.1(b)(1). This approach also hamstrings the Secretary who cannot respond to those additional arguments and authorities set out in the Reply. *See Atl. Power & Elec. Co. v. Big Jake*. 583 F. Supp. 3d 631, (D.N.J. 2022) ("The law is clear that reply briefs should respond to arguments raised in the opposition brief, or explain a position in the initial brief that the respondent refuted. Reply briefs are not the time to present new argument.") (citation modified). The Court will consider Ms. Beberman's arguments in the Reply that respond to arguments made in the Secretary's Opposition, Dkt. 30 at 10, 18, and 19, but will not consider the additional arguments improperly raised.

In addressing the likelihood of success on the merits factor, the question before the Court is whether Ms. Beberman can show that this Court erred in adjudicating the Transfer Order such that when the District Judge reviews it, he will determine that she "made a

sufficient showing that it could win on the merits—i.e., significantly better than negligible but not necessarily greater than 50%." *In re Revel AC,* 802 F.3d at 571. To make that assessment, the District Judge must, in turn, apply the standard of review of a non-dispositive motion adjudicated by a Magistrate Judge. *Paddock v. Novartis Parms. Corp.*, 2026 WL 1678201, at *1 n.1 (D. Del. June 10, 2026) ("District courts within the Third Circuit have consistently held that a motion to transfer venue involves a non-dispositive pretrial matter and is therefore governed by Fed. R. Civ. P. 72(a).") (citing cases). Under Rule 72(a), district judges will modify or set aside any part of a non-dispositive order that is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also Pragmatus AV, LLC v. Yahoo! Inc.,* No. 11-cv-902, 2013 WL 174499, at *1–2 (D. Del. Jan. 16, 2013) ("[A] motion to transfer venue is non-dispositive and subject to a 'clearly erroneous' or 'contrary to law' standard of review.").

A factual finding is clearly erroneous only when, after reviewing the entire record, the Court is "left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 92 (3d Cir. 1992). This standard is significantly deferential and does not permit a reviewing court to reweigh the evidence or substitute its own factual determinations for those of the magistrate judge. *See Klemmer v. MGM Resorts Int'l,* No. 22-cv-7363, 2026 WL 2364412, at *4 (D.N.J. Aug. 14, 2026). A ruling is "contrary to law only when it rests upon a misinterpretation or misapplication of controlling legal principles." *Id.*

Thus, a reviewing court determines whether a magistrate judge committed clear error or its order was contrary to law, and then whether the movant seeking a stay can show

a likelihood of success on the merits under the "significantly better than negligible" standard.[1] This Court is called upon to forecast that analysis, to ascertain whether Ms. Beberman has shown in her Emergency Motion that she has a likelihood of success on the merits in opposing transfer of this case.

For the most part, although Ms. Beberman asserts that various errors were both clearly erroneous and contrary to law, without parsing the two standards, she attributes most of this Court's errors to legal errors. Her analysis starts from the premise that the Court's "analysis of the public and private interest factors should have been as follows," after which she points out where she disagreed with the Court's conclusions. Dkt. No. 25 at 6.

As to any clear errors of fact, Ms. Beberman appears to raise fact-based arguments in relation to the Court giving insufficient weight to her contentions surrounding her desire to have her chosen counsel, barred in the DVI but not in the D.C. Court, represent her in the District of the Virgin Islands. She writes that the Court

> clearly erred in reasoning that because her counsel could represent her before the FSGB, he can represent her in the D.D.C. That is not true. Furthermore, her chosen counsel can only represent her pro hac vice, if she can find counsel barred in D.C. and admitted to the D.D.C. who is willing to take on her case. Because neither she nor her counsel are members of the D.C. bar or live in the D.C. area, this is a heavy lift.

*Id*. at 10; *see also* Dkt. No. 30 at 10, 18. She adds that the Court disregarded that the only district court cases in which she obtained counsel have been those filed in the D.V.I. "From

[1] Ms. Beberman applied these standards as well. Dkt. No. 25 at 4.

this, the Magistrate Judge should have concluded that Ms. Beberman could not readily obtain counsel in D.C." Dkt. No. 25 at 10-11.

The Court points out that these contentions are merely argument. Ms. Beberman provided absolutely no factual support, such as through an affidavit or affirmation, that would transform her arguments into facts. As the Court pointed out in the Transfer Order, she did not, for example,

> aver that she tried and failed to obtain counsel in the D.C. Court, and there could be a host of other reasons for the fact that Ms. Beberman, an attorney, appeared pro se in the D.C. Court. Moreover, the same local counsel litigating the instant case in the DVI also served as her counsel before the FSGB in Washington, D.C. when it addressed the remanded issue— indicating that the VI counsel has the ability to litigate outside of the DVI.

Dkt. No. 24 at 15; *see id*. at 20 ("transferring the case to the D.C. Court would not necessarily mean that her chosen DVI counsel . . . could not continue to represent her in a pro hac vice capacity."). She states explicitly "That is not true" in response to the Court's view that her counsel had the ability to litigate outside the DVI, but she does not show how or if that alleged fact is actually "not true" or how the Court should have concluded that she could not readily obtain counsel in D.C. In sum, the Court could not have "clearly erred" in its Transfer Order in not giving the kind of weight Ms. Beberman believed her local counsel argument should have been accorded because there were no facts offered from which the Court, or a reviewing court, could have been left with "a definite and firm conviction that a mistake has been committed." *U.S. Gypsum Co.*, 333 U.S. at 395.

Ms. Beberman points out numerous conclusions this Court made in the Transfer Order that she believes are contrary to law: (1) the D.C. Court did not retain the case, did not

desire to review it on remand, and that it was an active case, Dkt. No. 25 at 7-8; (2) the court congestion and local interest public factors were assessed incorrectly, *id.* at 8-9; (3) the Court gave insufficient weight to her desire to be represented by local counsel, *id*. at 10; (4) it disregarded the fundamental principle that her choice of forum (where she was domiciled) was due great deference, *id*. at 11, and systematically undervalued her forum choice, *id*. at 9; (5) she was not forum shopping, *id*. at 11, 14; and (6) the Secretary's preference and inconvenience to the Secretary private factors were not weighed properly, *id*. at 13, 15.

As indicated above, Ms. Beberman's point of reference for all of these purportedly legal errors is that the Court's analysis should have aligned with her arguments, not the Secretary's, *id*. at 6, and therefore the Court erred because it did not agree with her positions. In raising these alleged errors, she reiterates her arguments in opposition to the Secretary's Motion to Transfer and conclusorily states that the Court erred. Dkt. No. 20. In *West v. Pa. Dep't of State,* No. 24-cv-1349, 2024 WL 4528174 (W.D. Pa. Oct. 18, 2024), the Court held that "'[m]ere repetition of arguments previously considered and rejected cannot be characterized as a strong showing of a likelihood of success on the merits.'" *Id.* at *1-*2 (quoting *Cottillion v. United Ref. Co.*, No. 09-cv-140, 2014 WL 7344005, *3 (W.D. Pa. Dec. 23, 2014)). In *West,* the court declined the plaintiff's invitation to essentially reconsider its prior ruling, largely for the same reasons it had previously articulated, in concluding that the likelihood of success factor was not met. It denied the motion for an injunction pending appeal—the standard of which was "essentially the same" as that for a stay. *Id.*

Ms. Beberman has employed the same approach. The Court will not reconsider the same arguments here that she has already made in her opposition to the Secretary's Motion to Transfer Venue. The Court assessed the Motion to Transfer pursuant to governing law—the *Jumara* factors—and applied that law. It considered her arguments but weighed them entirely differently. That is not a misinterpretation or misapplication of controlling legal principles: it is merely a different assessment of those controlling principles than Ms. Beberman arrived at.[2] As a result, having shown no error of law, Ms. Beberman has also not demonstrated that she can win on the merits by showing that her merits arguments are "significantly better than negligible but not [necessarily] greater than 50%" in terms of their chance of success. *In re Revel AC*, 802 F.3d at 571. The Court considers her merits arguments as having a only a minute chance of success, and therefore concludes that Ms. Beberman has not succeeded on the likelihood of success stay factor.[3]

---

[2] For example, Ms. Beberman essentially relied on the *Jumara* plaintiff's choice of forum private factor to oppose the Secretary's Motion to Transfer Venue. But because the "determination of how much weight each factor should be given in the transfer analysis is itself discretionary, courts have implicit authority under *Jumara* to disregard a plaintiff's chosen forum if all relevant factors indicate that on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Kalawa v. United States*, No. 19-cv-16089, 2020 WL 3603205, at *4 (D.N.J. July 2, 2020) (citation modified).

[3] The only point in her moving brief where Ms. Beberman actually argued that this Court committed a clear error of law was in reference to the Court's statement that the D.C. case was "an active case, although stayed pending resolution of the [Transfer] Motion." Dkt. No. 25 at 8 (quoting Dkt. No. 24 at 23). She quoted a snippet from *SecurityPoint Holdings, Inc. v. Transportation Security Administration*, 836 F.3d 32, 38 (D.C. Cir. 2016), opining that "when a court remands a case based on agency error without retaining jurisdiction, the case is terminated." *SecurityPoint*'s ruling concerned whether a party was a prevailing party under the Equal Access to Justice Act, which in turn depended on whether the civil action remained ongoing in the district court (i.e., the court retained jurisdiction) or whether the court

### B. Irreparable Harm

#### 1. The Parties' Arguments

Ms. Beberman argues that absent a stay, she will suffer immediate and irreparable harm. If the case were transferred before she can file objections to the Transfer Order, that would compound the harm because she has a right to object and have this Court review those objections. If the transfer proceeds immediately, that right would become meaningless. Otherwise, she would be forced to litigate in the D.C. Court while briefing objections to an order that has already been executed. Such procedural harm is irreparable. *Id*. at 16. She reasserts that, upon transfer, she will be separated from her chosen counsel who represented her before the FSGB "even to challenge this transfer motion." *Id*. at 16-17. She would incur costs and burdens from litigating in the D.C. Court that cannot be recovered even

remanded to an agency without retaining jurisdiction, thereby terminating the case such that the petitioner became a prevailing party under the EAJA without regard to the outcome on remand. Ms. Beberman does not explain how that case is applicable in this context, where one issue was remanded to the FSGB and Ms. Beberman appealed the May 2025 *Beberman DC* summary judgment order to the D.C. Court of Appeals. The FSGB determined the remanded issue in December 2025 and the D.C. Court of Appeals granted the Secretary's motion to dismiss based on lack of jurisdiction in April 2026. The case returned to the D.C. Court, where the Secretary's Rule 54(b) motion had been pending. On July 8, 2026, the D.C. Court issued an Order staying the case, observing that there was a "substantial overlap" between that case and the instant case filed by Ms. Beberman in the DVI, and that proper resolution of that motion may change depending on the outcome of the DVI case. Dkt. No. 63 in 22-cv-3434 (D.D.C.). In July 2026, Ms. Beberman challenged that Order in the D.C. Court. Dkt. Nos. 64, 66 in 22-cv-3434. When confronted with the fact that the D.C. Court has stayed *Beberman DC* pending resolution of the Transfer Motion (indicating that it is an active case), Ms. Beberman conclusorily sweeps it aside in her Emergency Motion, commenting that that court's "insinuations" were "of no moment." Dkt. No. 25 at 7. She does not address this Court's observation in the Transfer Order that the D.C. Circuit's rejection of her appeal indicated that the D.C. Court's Order was not final.

if she prevails on her objections. *Id.* at 17. The harm is asymmetric, as the Secretary will face no relevant inconvenience in litigating the objections to the Transfer Order in the DVI, while she will be harmed by being forced to challenge the Order thousands of miles from her home without her chosen counsel. *Id.*

In his Opposition, the Secretary contends that Ms. Beberman's position on irreparable harm essentially boils down to an argument that losing a motion to transfer will always prompt irreparable harm because of the alleged costs to litigate in the forum where the case is transferred. Dkt. No. 27 at 3. She cited no authority for the proposition that litigating in the appropriate forum is an irreparable harm. She also presumes an injustice in the transfer when the injustice was created by her "classic forum shopping." *Id.*

**2. Application**

Irreparable harm has been defined as "harm that cannot be prevented or fully rectified" by a successful appeal. *In re Revel AC, Inc.*, 802 F.3d at 568. The stay applicant must "demonstrate that irreparable injury is *likely* [not merely possible] in the absence of [a] [stay]." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008). "The requisite feared injury or harm must be irreparable—not merely serious or substantial, and it must be of a peculiar nature, so that compensation in money cannot atone for it." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (citation modified). A "purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement." *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 255 (3d Cir. 2011) (noting an exception exists where

potential economic loss is so great as to threaten the existence of movant's business) (citation modified).

The alleged irreparable harms that would occur if this case were transferred to the D.C. Court prior to filing objections in this Court fall into three categories: (1) having to brief objections in the D.C. Court after the case has transferred and being forced to litigate in D.C. Court while briefing objections to an order that has already been executed, *id.* at 16; (2) being forced to proceed without her chosen counsel, "even to challenge this transfer motion," *id*. at 16-17; and (3) incurring costs and burdens from litigating in the D.C. Court that cannot be recovered even if she prevails on her objections or appeal, *id*. at 17. Ms. Beberman offers no case law (either in her moving brief or in her Reply) to support her arguments that these issues constitute irreparable harm, and the Court concludes she has not met her burden to show such harm.

Ms. Beberman took full advantage of the briefing schedule set by the Court on her Emergency Motion to file Objections to the Transfer Order; the only difference is whether they will be adjudicated in the DVI or the D.C. Court. While she conclusorily states that she has a "right" to have this Court review those Objections, she provides no support for that contention. And as the Court observed above, there are no record facts showing that Ms. Beberman would have to forgo being represented by her chosen counsel in the D.C. Court. She contends that, in order to have him admitted pro hac vice in the D.C. Court, it would be a "heavy lift" for her to find counsel admitted in the D.C. Court who would be willing to take her case, particularly since neither she nor her counsel are barred or live there. Dkt. No. 25

at 10. However, a "heavy lift" is not equivalent to irreparable harm. Ms. Beberman has not put forward any facts showing that she tried and failed to have her chosen counsel admitted pro hac vice in the D.C. Court. Thus, whether her chosen counsel would not represent her in that court is merely speculation, and the Third Circuit has "insisted that the risk of irreparable harm must not be speculative." *Adams v. Freedom Forge Corp*., 204 F.3d 475, 488 (3d Cir. 2000). The costs of litigating in the D.C. Court would not constitute irreparable harm because this general level of economic injury does not suffice. *Minard Run Oil Co.*, 670 F.3d at 255. As a result, the Court concludes that she has not shown that she will suffer irreparable harm by the case being transferred prior to filing a petition for mandamus in the Third Circuit, given that she has already filed her Objections to the Transfer Order.[4]

---

[4] In her Emergency Motion, Ms. Beberman sought a stay that would last until she filed objections to this Court's Transfer Order and, if necessary, pursued an appeal to the Third Circuit Court of Appeals. Dkt. No. 25 at 1. The Court initially discounted the appeal timeline due to governing case law that "orders transferring venue from one district court to another are not appealable." *Block v. Wash. State Bar Ass'n*, No. 18-2525, 2019 WL 13219441, at *1 (3d Cir. Feb. 15, 2019) (citing *Carteret Sav. Bank v. Shushan*, 919 F.2d 225, 228 (3d Cir. 1990)). However, after the Secretary mentioned that mandamus would be the avenue to challenge a transfer order, Ms. Beberman changed her request for relief in her Reply to a stay being necessary so the District Court could rule on the Objections or so she could pursue a writ of mandamus in the Third Circuit. Dkt. No. 30 at 1. Of course, making this change in the Reply (regarding, at the least, a stay pending resolution of the Objections) did not provide the Secretary an opportunity to respond. But the fact that her Emergency Motion sought a stay both while she prepared her Objections to the Transfer Order and anticipated a possible appeal to the Third Circuit did not moot her Emergency Motion once she filed those Objections, Dkt. No. 29. Although the Third Circuit has long taken a dim view of mandamus review of transfer orders, *All States Freight, Inc. v. Modarelli*, 196 F.2d 1010 (3d Cir. 1952), it still may be possible.

### C. Substantial Harm Resulting from Other Parties from Issuance of the Stay; The Public Interest

Ms. Beberman asserts that the Secretary will suffer no substantial harm from a temporary stay pending her objections and any subsequent appeal, as it will preserve the status quo while the Court considers her objections to the Transfer Order. Dkt. No. 25 at 17. In contrast, if the case is transferred, it could only be transferred back to the DVI after a successful appeal, resulting in duplicative proceedings that will waste judicial resources. *Id*. at 18.

She adds that the public interest strongly favors granting the stay. *Id*. The public has an interest in preventing forum shopping and the public interest favors plaintiffs accessing counsel of their choice in their home forums. She has a right to file Objections to the Magistrate Judge's Order. Allowing transfer before she can brief the Objections makes it difficult for her to exercise that right and undermines the orderly administration of justice. *Id*. at 19.

The Secretary points out that these two remaining factors "merge when the Government is the opposing party," *KalshiEX, LLC v. Flaherty*, 172 F.4t h 220, 225 (3d Cir. 2026), and are relatively neutral. Dkt. No. 27 at 3-4. In her Reply, Ms. Beberman asserts that the Secretary merged the two arguments and did not refute any of the grounds she identified as supporting a stay based on these two factors. Dkt. No. 30 at 19.

The Court need not address these two stay factors if the moving party is unable to make a sufficient showing of a likelihood that she will win on the merits and will suffer irreparable harm if a stay is not enforced. In such a situation "the inquiry into the balance of

harms [and the public interest] is unnecessary, and the stay should be denied without further analysis." *In re Revel AC, Inc.*, 802 F.3d at 571 (citation modified). Because Ms. Beberman did not show a likelihood of success on the merits or that she would suffer irreparable harm, the Court will forgo an analysis of the last two stay factors and will deny the motion.

## CONCLUSION

For the reasons set forth above, it is hereby **ORDERED:**

1. Ms. Beberman's Emergency Motion to Stay Transfer Pending Objections, Dkt. No. 25, is **DENIED.**
2. The Clerk of Court shall comply with this Court's August 13, 2026 Order, Dkt. No. 24, and **TRANSFER** this case to the District Court for the District of Columbia.

ENTER:

Dated: August 20, 2026

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE